UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JASON R. BOHLINGER, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-516-JD-MGG |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Before the court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Ron Neal, Lieutenant Michael Moon, and Lieutenant Alisha Winn (collectively, "Defendants"). (ECF 16.) For the reasons stated below, the motion is granted in part and denied in part.

I.     FACTS

As was outlined in the screening order, plaintiff Jason Bohlinger is an inmate at Indiana State Prison ("ISP"). (ECF 1; ECF 8.) He alleges that the prison went on an extended lockdown in January 2021 lasting several months as the result of the death of an inmate and the subsequent murder of a correctional officer. (ECF 1 at 2.) He claims that during the lockdown he was regularly served inadequate, spoiled, and contaminated foods, causing him to lose 26 pounds. (*Id.* at 2-3.) Specifically, he claims that meals were delivered from the kitchen and routinely allowed to sit unheated or unrefrigerated for hours on Styrofoam trays in the prison's housing units. (*Id.* at 2.) As a result, he claims they became contaminated with "bacteria" and "air-borne elements,"

such as "dirt, hair, and lice" from the "wild pigeons that fly everywhere in the cell house." (*Id.* at 2.) He further claims that "almost every day" he was served spoiled and inedible food, including "raw potatoes," bread that was "hard and stale to the point of turning to mold," and "apples that are rotten inside." (*Id.* at 7.) As an example, he alleges that on June 11, 2021, he was served a meal at 12:30 p.m. that had been prepared at approximately 7:30 a.m. and left out at room temperature in his housing unit since that time. (*Id.* at 7.) The meal consisted of corn, potatoes, bread, cookies, and some type of meat "patty." (*Id.*) He ate the food and became physically ill. (*Id.*) Other inmates surmised that the potatoes may have been rotten, but he is unsure because he has difficulty smelling and tasting due to a prior head injury. (*Id.*) He claims that due to the lack of food he experienced headaches, dizziness, hunger, and ultimately lost 26 pounds, which was about 15 percent of his body weight. (*Id.* at 4, 7.)

Based on these allegations, the court concluded that he adequately alleged an Eighth Amendment violation. (ECF 8.) The court permitted him to proceed against Lieutenants Moon and Winn in their personal capacity on a claim for damages, and against Warden Neal in his official capacity on a claim for injunctive relief.[1] (*Id.* at 6-7.) Defendants move to dismiss all of these claims. (ECF 16.) Mr. Bohlinger filed a response in opposition to the motion, and Defendants filed a reply thereto. (ECF 18, 19.) The matter is now ripe for adjudication.

---

[1] The court dismissed other claims, including a claim against the grievance officer and an executive assistant at the prison. (ECF 8 at 3-4.) The court also granted him leave to proceed against Wayne Peoples, a food service supervisor at the prison, but Mr. Peoples has not joined in the motion to dismiss and instead answered the complaint. (ECF 15.)

2

II.     LEGAL STANDARDS

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough factual content to 'state a claim to relief that is plausible on its face.'" *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128–29 (7th Cir. 2022) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Chamara*, 24 F.4th at 1129. In deciding whether this standard is met, the court must "accept[] all well-pleaded factual allegations as true and draw[] permissible inferences in the plaintiff's favor." *Aluminum Trailer Co. v. Westchester Fire Ins. Co.*, 24 F.4th 1134, 1136 (7th Cir. 2022).

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement," which includes being given "adequate food, clothing, shelter, and medical care." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To meet

3

this standard, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). "This is a high bar because it requires a showing of something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.* (citation, internal quotation marks, and alteration omitted).

III.   ANALYSIS

   A.   Objective Prong

Defendants first argue that Mr. Bohlinger does not plausibly allege a condition of confinement that is objectively serious enough to violate the Eighth Amendment. They interpret the complaint as alleging only that the food he was served was not hot enough, and they argue that "[b]eing served cold food is not a violation of one's constitutional rights." (ECF 17 at 2.)

In determining whether the denial of food amounts to a constitutional violation, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). Giving Mr. Bohlinger's allegations liberal construction as the court must, he alleges that for a period of several months he was regularly served spoiled food and food contaminated with debris, which made it inedible. The court does not understand him to be merely complaining that the food was not hot enough; instead, he raises legitimate concerns about the prison's practice of leaving foods unheated and unrefrigerated for hours in all kinds of weather, which could cause bacterial growth and did on occasion make him ill. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) ("The Constitution mandates that prison officials provide inmates with

4

nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.") (citation and internal quotation marks omitted). Although Defendants are correct that "routine discomfort" is part of the penalty prisoners pay for their offenses, the Eighth Amendment entitles them to adequate food to meet their nutritional needs. *See Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). Mr. Bohlinger plausibly alleges that he was not provided with sufficient food to meet his nutritional needs for several months, causing him to feel hungry, suffer headaches, and lose weight.

Defendants also characterize Mr. Bohlinger's decision not to eat certain foods during this period as a "hunger strike." (ECF 17 at 3.) However, the fact that he declined to eat foods that were visibly moldy, rotten, or contained foreign objects does not mean he was trying to "engineer" a constitutional violation as Defendants suggest. (*Id.*) His allegations, and the reasonable inferences arising therefrom, suggest that he was simply trying to avoid becoming ill from eating these foods, although he was not always successful. It is true, as Defendants argue, that the "denial of a few meals" over a period of months does not amount to a constitutional violation. *See Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004). But as outlined above, Mr. Bohlinger describes more than just a few missed meals. He describes a prolonged period of routinely being served rotten and otherwise inedible food, leading to physical symptoms and weight loss.

Defendants also take issue with this court's interpretation of the complaint as alleging that the food was being served in "open" containers. In Defendants' view, it is

5

clear from the complaint that "these are closed containers." (ECF 17 at 4.) However, throughout the complaint Mr. Bohlinger refers to being served food on "trays," which suggests an open receptacle, rather than a closed container.[2] He also claims that debris from pigeons and other airborne contaminants was able to get into the food, suggesting that the food was not covered. At most, his reference to "trays" is ambiguous, and the court must construe all inferences in his favor at this early stage. *Aluminum Trailer Co.*, 24 F.4th at 1136. Furthermore, even if Defendants are correct that the food was served in containers that had some type of covering, Mr. Bohlinger alleges (and the court must accept as true) that they were not sufficiently protected from airborne contaminants or stored in a manner necessary to keep them from spoiling.[3] He has alleged enough to satisfy the objective prong.

B.     Subjective Prong

Defendants Moon and Winn further argue that Mr. Bohlinger has not satisfied the subjective prong, and that they cannot be held liable merely because he notified them of the problem with the food. (ECF 17 at 5.) They are correct that a defendant "cannot be hit with damages under §1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). In other words, a prisoner cannot simply "write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of

---

[2] Webster's Dictionary defines "tray" as "an open receptacle with a flat bottom and a low rim for holding, carrying, or exhibiting articles." *See* https://www.merriam-webster.com/dictionary/tray.

[3] Defendants state that they are "unaware of any Constitutional requirement to plastic wrap." (ECF 17 at 5.) The court does not understand Mr. Bohlinger simply to be complaining about a lack of plastic wrap or other food covering; his claim is about the denial of adequate food to meet his nutritional needs.

6

those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to" a resolution of the problem. *Id.*

But that is not what Mr. Bohlinger allegedly did here. Accepting his allegations as true and construing all reasonable inferences in his favor, he claims that he personally spoke with Lieutenants Moon and Winn, correctional supervisors in his housing unit, about the ongoing problems with the food. (ECF 1 at 3.) It can be plausibly inferred from the complaint that part of their duties included ensuring that inmates within their units received proper meal trays each day. (*Id.*) Mr. Bohlinger alleges he told these Defendants that the inmates' trays regularly consisted of food that was spoiled or contaminated, yet they allegedly did nothing to address the problem and instead allowed it to continue for months. He claims to have later brought a specific problem to the attention of Lieutenant Moon, informing him that his food was covered in a "shiny substance" he suspected was rainwater. He asked to be given a different tray, but claims the lieutenant refused to give him anything different to eat or even listen to his concerns. The complaint can also be read to allege—and Mr. Bohlinger reiterates in his response to the motion to dismiss—that the problems with the food were not caused by a mere oversight; he suspects the meals were served in this manner because correctional officers were angry about the murder of a fellow officer in

February 2021, which was part of the reason for the lockdown.[4] This may turn out to be inaccurate, but he has alleged enough to plausibly suggest that these defendants knew of and consciously disregarded a substantial risk of harm. *Rasho*, 22 F.4th at 710; *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he described a "prototypical case of deliberate indifference"); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998) (inmate adequately stated claim for deliberate indifference where he alleged facts showing defendants knew he was having a "serious" problem and "did nothing about it").

    C.    The Warden

Finally, as to Warden Neal, Defendants argue that there is no basis to hold him liable as high-ranking official at the prison. (ECF 17 at 5-6; ECF 19 at 1-2.) The court agrees that modification of the screening order is warranted. The screening order allowed Mr. Bohlinger to proceed on an official capacity claim against Warden Neal. (ECF 8 at 6.) Mr. Bohlinger argues that such a claim is proper under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but as Defendants correctly point out, *Monell* only applies to municipal actors, not state officials. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). A state prison official can be named in an official

---

[4] Defendants argue that any factual assertions contained in Mr. Bohlinger's response must be disregarded. (ECF 19 at 2.) It is true that a plaintiff cannot amend his complaint through a brief in opposition to a motion to dismiss, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). But in defending a motion to dismiss, the plaintiff may refer to additional facts in his response, as long as they are not inconsistent with the allegations in the complaint. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment."). Mr. Bohlinger has not made any inconsistent allegations here.

capacity on a claim for prospective injunctive relief, but only if there is an ongoing constitutional violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997); *see also Rasho*, 22 F.4th at 712 (outlining available forms of injunctive relief in the prison context). The complaint was not particularly clear on this point, but it is evident from Mr. Bohlinger's response that the problems with the meals occurred during a finite period ending in July 2021. (ECF 18 at 5) ("From January 21, 2021, through the end of July 2021 he was served either cold or frozen contaminated food in the cold winter months and was served spoiled and contaminated food during the summer months, which between this time span of almost six months the Plaintiff could not eat his meals and often went hungry."). Without an ongoing constitutional violation, he cannot proceed on a claim for injunctive relief against the Warden in his official capacity.[5] *See Marie O.*, 131 F.3d at 615.

That leaves the possibility of Mr. Bohlinger suing the Warden in his personal capacity for damages. As Defendants point out, liability under 42 U.S.C. § 1983 is based on personal responsibility, and the Warden cannot be held liable solely because he oversees operations within the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 596. Nevertheless, supervisory correctional staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019).

---

[5] Any claim for damages against the Warden in his official capacity would be barred by the Eleventh Amendment. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). Additionally, to the extent Mr. Bohlinger is trying to seek prospective injunctive relief on behalf of other inmates who may at some point in the future be served inadequate food during a lockdown, he has no standing to do so. *Massey v. Helman*, 196 F.3d 727, 739–40 (7th Cir. 1999).

Under this principle, an official "does not have to have participated directly in the deprivation" to be held liable. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Accepting Mr. Bohlinger's allegations as true and construing all reasonable inferences in his favor, he claims that he personally notified the Warden in writing of the ongoing problems with the food but the Warden ignored him. (ECF 1 at 3.) It is true that a high-ranking official cannot be expected to "drop everything" every time he receives a complaint from an individual prisoner. *Burks*, 555 F.3d at 596. Yet the problem Mr. Bohlinger described in his letter was not a one-time issue experienced by an individual prisoner, like receiving a meal tray on one occasion with a spoiled apple. Rather, he described an ongoing, serious problem with the manner the food was being served in the entire prison. He claims that the Warden did nothing, and instead allowed this widespread problem to persist for months, causing him and others to suffer physical symptoms from a lack of food. Further factual development may show that the Warden did not receive the letter or otherwise lacked the requisite knowledge, but he has alleged enough to proceed further against the Warden. *See Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) (prisoner's allegation that warden disregarded letter alerting him to a problem with a "treacherous" stairway, which ultimately caused him to fall and injure himself, was sufficient to "make out, at this stage of the proceedings, a plausible claim that [the warden] knowingly turned a blind eye to the hazard which led to [the plaintiff's] injury"); *Reed*, 178 F.3d at 855 (plaintiff's written communications, which were allegedly received but disregarded, put supervisory prison officials on notice of the plaintiff's problem).

For the reasons, the court:

(1) GRANTS in part and DENIES in part the Defendants' motion to dismiss (ECF 16);

(2) DISMISSES the official capacity claim against the Warden outlined in the screening order;

(3) GRANTS the plaintiff leave to proceed on a personal capacity claim against the Warden for damages for turning a blind eye to his need for adequate food from January 2021 through July 2021 in violation of the Eighth Amendment; and

(4) DIRECTS Defendants Moon, Winn, and Neal to answer the complaint within 21 days of this order.

SO ORDERED on March 8, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT